UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OLUWAROTIMI ODUTOLA,

    *Plaintiff,*

v.

ROBERT P. FLOYD, *et al.*,

    *Defendants.*

Case No. 1:21-cv-3212-RCL

## MEMORANDUM OPINION

What duties do an opposing counsel and an opposing party owe to their opponent in a litigation? That is the question Oluwarotimi Odutola raises in his present *pro se* lawsuit against the opposing lawyer and party in his prior lawsuit against Branch Banking and Trust Company ("BB&T"), where Mr. Odutola used to work. He filed his first lawsuit against BB&T alleging discrimination and retaliation. Now, he argues that BB&T as well as its lawyer, Robert P. Floyd, III, committed fraud, intentional infliction of emotional distress, and breaches of the D.C. Rules of Professional Conduct during the discovery process of that first lawsuit. The defendants have moved to dismiss Mr. Odutola's present lawsuit, arguing that Mr. Odutola does not state a claim upon which relief can be granted.

It has now come to this Court's attention that Mr. Odutola has failed to adequately invoke this Court's subject-matter jurisdiction. On that basis, the Court, *sua sponte*, will **DISMISS WITHOUT PREJUDICE** Mr. Odutola's present lawsuit.

## I.    BACKGROUND

In October 27, 2017, Mr. Odutola filed a *pro se* lawsuit against his former employer, BB&T. *Odutola v. Branch Banking & Tr. Co.*, 321 F. Supp. 3d 67, 70–71 (D.D.C. 2018) ("*Odutola I*"). Mr. Odutola alleged that he was a personal banker at BB&T from October 17, 2015 to

1

November 22, 2016. *Id.* at 70. He further stated that, during his time at the bank, he (1) was convinced to violate BB&T's corporate policy against leaving a branch with only one teller working, (2) faced discriminatory remarks, (3) was confronted by an irate customer which the branch manager did nothing to address, (4) faced retaliation for threatening to report the branch manager to the federal government and the human resources department, and (5) was ultimately placed on administrative leave and then terminated after calling the police regarding the customer confrontation. *Id.* at 70–71. He alleged that his termination was unlawful and brought claims for negligence, hostile work environment, violation of public policy, and retaliation. *Id.* at 71.

That lawsuit was dismissed by this Court in 2018 after BB&T moved to dismiss for failure to state a claim upon which relief can be granted. *Id.* at 76. Mr. Odutola then obtained counsel and filed an amended complaint after which the case proceeded to discovery. *Odutola v. Branch Banking & Tr. Co.*, No. 1:18-cv-94 (RCL), 2021 WL 5906105, at *1 (D.D.C. Dec. 14, 2021) ("*Odutola II*"). The case was then dismissed again after Mr. Odutola and his counsel "failed to prosecute his case, 'specifically in failing to attend the September 17 status conference and generally throughout the process of litigating th[e] case' by failing to 'manifest reasonable diligence in pursuing [his] case.'" *Id.* at *2 (internal citation omitted) (second alteration in the original). Consequently, this Court dismissed the lawsuit with prejudice and then subsequently rejected Mr. Odutola's request for reconsideration or relief from that judgment. *Id.* at *2, *6.

Mr. Odutola now brings the present lawsuit against BB&T and its counsel in the prior lawsuit. Compl., ECF No. 1. He brings claims for relief under the D.C. Rules of Professional Conduct as well as for fraudulent misrepresentation and intentional infliction of emotional distress while alleging damages of $47 million. Compl. ¶¶ 22–50. He invokes the Court's subject-matter jurisdiction by citing to D.C. Code § 11-921 and § 28-4507. Compl. ¶ 9. However, neither of

those code sections support subject-matter jurisdiction in this Court and Mr. Odutola does not adequately allege a federal question or diversity of citizenship as a proper basis of subject-matter jurisdiction. Accordingly, after reviewing the record and relevant law, this Court must *sua sponte* dismiss Mr. Odutola's lawsuit.

## II.   LEGAL STANDARDS

In order for a lower federal court to have subject-matter jurisdiction over a case or controversy, Congress must provide such jurisdiction by statute within the bounds of the Constitution's grant of jurisdiction in Article III. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, the parameters of subject-matter jurisdiction for lower federal courts are set forth in 28 U.S.C. §§ 1331 and 1332. The former, setting out what is known as federal question jurisdiction, provides for jurisdiction when "civil actions aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The latter, setting forth what is known as diversity jurisdiction, provides for jurisdiction over civil actions where the amount in controversy is in excess of $75,000 and there is diverse State citizenship between the parties. *Id.* § 1332.

Adequate grounds for subject-matter jurisdiction must be pled by the plaintiff, Fed. R. Civ. P. 8(a), and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). In other words, even when "neither party presents the issue, a court must dismiss a case when it lacks subject matter jurisdiction." *Masoud v. Suliman*, 816 F. Supp. 2d 77, 79 (D.D.C. 2011). And while the Court may look outside of the complaint for support, *id.* at 80, the Court must be able to assure itself that it is acting within its jurisdictional authority. *Id.* at 79. It is the "[p]laintiff [who] bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. EPA*, 121 F. Supp.

2d 84, 90 (D.D.C. 2000). Federal courts will consider the factual allegations in the complaint as true for this analysis. *Khan v. Holder*, 134 F. Supp. 3d 244, 249 (D.D.C. 2015).

A plaintiff proceeding *pro se* is held to a "less stringent" standard than a lawyer, and a court must construe the plaintiff's claims liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a *pro se* plaintiff is not exempt from the requirements of the federal rules. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009). That includes rules for alleging subject-matter jurisdiction. *See, e.g.*, *Xiu Jian Sun v. Obama*, No. 1:21-cv-1442 (JDB), 2021 WL 2291941, at *1 (D.D.C. June 4, 2021), *aff'd sub nom. Sun v. Obama*, No. 21-5147, 2021 WL 4765429 (D.C. Cir. Oct. 1, 2021), *cert. denied,* 142 S. Ct. 1207 (2022).

### III.   DISCUSSION

Mr. Odutola does not adequately allege any form of subject-matter jurisdiction. Even liberally construing his complaint and reviewing the record, the Court is not satisfied that it has jurisdictional authority over his lawsuit. Therefore, the Court must dismiss this case.

### A. This Court Does Not Have Jurisdiction Under the D.C. Code Provisions

Mr. Odutola cites to D.C. Code § 11-921 and § 28-4507 to allege that this Court has subject-matter jurisdiction for his claims. Starting with those provisions of the D.C. Code, neither provides subject-matter jurisdiction to this Court, which is the U.S. District Court for the District of Columbia. Instead, the first code provision explains that the Superior Court for the District of Columbia has jurisdiction over certain civil actions brought in the District of Columbia. D.C. Code Ann. § 11-921 (West) ("Except as provided in subsection (b), the Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District of Columbia."). That provision does not serve as a basis for subject-matter jurisdiction for the federal courts. *See Simon v. Mitchell*, 199 F. Supp. 3d 244, 245 (D.D.C. 2016). The latter code provision governs when the Attorney General of the District of Columbia may bring lawsuits. D.C. Code

4

Ann. § 28-4507 (West). It similarly does not provide this Court with jurisdiction, nor is relevant to this case.

### B. The Court Does Not Have Federal Question Jurisdiction

Mr. Odutola chose federal question jurisdiction as the appropriate basis for jurisdiction on the civil cover sheet he filed alongside his complaint. ECF No. 1-1. at 1. Federal question jurisdiction is appropriate when the case "arises under" federal law. "To determine whether a case arises under federal law, courts apply the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 355 (D.D.C. 2018) (internal quotation marks omitted) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003)). The jurisdictional distinction between District of Columbia law and federal law is functionally the same for the District of Columbia as the jurisdictional distinction between any State court and the accompanying federal district courts of that State. *See Shutack v. Shutack*, 516 F. Supp 219, 225 (D.D.C. 1981) (describing the jurisdiction of the Superior Court for the District of Columbia to be "equivalent to a hypothetical state trial court with jurisdiction in the state over all court business . . . ."); *D.C. Ass'n of Chartered Pub. Sch. v. D.C.*, 930 F.3d 487, 491 (D.C. Cir. 2019) (explaining that "laws applicable exclusively to the District of Columbia" do not provide federal question jurisdiction (quoting 28 U.S.C. § 1366)).[1]

---

[1] Of course, the District of Columbia is in a somewhat unique position compared to a State. Nevertheless, the District of Columbia Reorganization Act of 1970 ("DCRA") explains and codifies that there is a jurisdictional distinction between the Superior Court for the District of Columbia and this Court. The DCRA separated out this Court as a more traditional Article III court. D.C. Code § 11-101 (West). There are specifically enumerated exceptions, but they have limited effect. *See* D.C. Code § 11-501 (West) (establishing that the exceptions are only valid for periods of 18 and 30 months from the date of enactment of the DCRA); *see also Thompson v. United States*, 548 F.2d 1031, 1035 (D.C. Cir. 1976) (describing that Congress provided for gradual transfer of jurisdiction in the Act to avoid prejudicing parties already litigating).

None of Mr. Odutola's claims raise the required federal question. The claims of fraudulent misrepresentation and intentional infliction of emotional distress are State law claims and do not arise under the Constitution, laws, or treaties of the United States. Compl. ¶¶ 42–44 (relying on the local law of the District of Columbia for fraudulent misrepresentation), ¶¶ 46–49 (relying on the local law of the District of Columbia for intentional infliction of emotional distress). Similarly, the claims under the D.C. Rules of Professional Conduct, if actionable, arise under State law as well since the Rules are generated by the District of Columbia Court of Appeals, a local, rather than federal, institution, for local use. *See Ford v. Tait*, 163 F. Supp. 2d 57, 59 (D.D.C. 2001). And while it is true that Mr. Odutola's claims arose out of the discovery process for a federal lawsuit, that does not generate a federal issue "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Organic Consumers Ass'n*, 314 F. Supp. 3d at 355 (internal quotation marks omitted) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

### C. The Plaintiff Has Not Demonstrated that the Court Has Diversity Jurisdiction

Because the plaintiff is proceeding *pro se*, this Court will liberally construe his filing to also allege jurisdiction under 28 U.S.C. § 1332. Nevertheless, the complaint fails to satisfy the requirements of pleading for diversity jurisdiction.

"[I]t is the invoking party's burden to show that: (1) complete diversity exists; and (2) the claim in good faith exceeds $75,000." *Meng v. Schwartz*, 305 F. Supp. 2d 49, 55 (D.D.C. 2004). The "complete diversity" requirement is satisfied only if "*each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphases in original). "[D]iversity must exist at the time that the action is commenced." *Meng*, 305 F. Supp. 2d at 56. And "the citizenship of *every* party to [an] action [in diversity] must be distinctly alleged [in the complaint] and cannot be established presumptively or by mere

inference." *Id.* at 55 (emphasis added). A corporate defendant "is a citizen of both (a) the state of its incorporation, and (b) the state in which it maintains its principal place of business." *Odutola I*, 321 F. Supp. 3d at 71. Meanwhile, "[a]n individual is deemed a citizen of the State of his domicile." *Edwards v. Freeman*, 951 F. Supp. 2d 120, 124 (D.D.C. 2013).[2] In sum, Mr. Odutola needed to allege, in his complaint, the citizenship of both himself and the two defendants.

Mr. Odutola has failed to allege the citizenship of Mr. Floyd. The complaint states that Mr. Floyd's employer, Constangy, Brooks, Smith & Prophete, LLP, is located at 12500 Fair Lakes Circle, Suite 300. Compl. ¶ 11. The cover of the complaint places that location in Fairfax, Virginia. Compl. at 1. That is the extent to which Mr. Odutola indicates Mr. Floyd's State citizenship. However, Mr. Odutola sued Mr. Floyd as an individual rather than the law firm for which he practices. Compl. ¶ 13. Therefore, diversity jurisdiction requires allegations as to Mr. Floyd's domicile. Because there are no such allegations, and this Court, despite searching review, cannot otherwise assure itself that Mr. Floyd and Mr. Odutola have different State citizenships, the lawsuit cannot be maintained on the grounds of diversity jurisdiction. *See* ECF No. 1 at 5, 8, 9, 28 (mentioning Mr. Floyd as practicing in Virginia but not identifying or alleging his domicile).

\* \* \*

Because Mr. Odutola has not adequately pled subject-matter jurisdiction, this Court must dismiss his lawsuit. The Court will not rule on defendants' motion to dismiss for failure to state a claim because this Court does not have subject-matter jurisdiction over the case. *See Dewees v. United States*, 272 F. Supp. 3d 96, 102 (D.D.C. 2017), *aff'd*, 767 F. App'x 4 (D.C. Cir. 2019). Indeed, because Mr. Odutola may try bringing his claims anew in D.C. Superior Court, or pursue

---

[2] "Domicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Lopes v. JetSetDC, LLC*, 70 F. Supp. 3d 555, 559 (D.D.C. 2014) (quoting *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984)).

his allegations in front of a professional licensing entity, it would be doubly inappropriate for this Court to opine on the defendants' motion.

## IV.   CONCLUSION

Based on the reasoning above, this Court will *sua sponte* **DISMISS WITHOUT PREJUDICE** the plaintiff's lawsuit for lack of subject-matter jurisdiction. The Court will further **DENY** the defendants' motion to dismiss as moot.

The Court will **GRANT** the plaintiff's motion for leave to file a surreply.

A separate order will issue.


Date: September 23, 2022

　　　　　　　　　　　　　　　　　　　　　Royce C. Lamberth
　　　　　　　　　　　　　　　　　　　　　United States District Judge